Daniel Z. **NELSON, Lloyd Zeiderman and Harold Greenberg,**
Plaintiff(s),

v.

Rosalie **STAHL, Scott G. Savastano, NewVest Capital Corp., NewVest Portfolio 96–A, L.L.C., NewVest Portfolio 96–B, L.L.C., Han Kook, L.L.C, Marks Paneth & Shron LLP, Steven Eliach, Timothy E. Andrews, Thelen Reid & Priest LLP and Harry G. Heching, Defendant(s).**

No. 00CIV.4435 (LTS)(FM).

United States District Court, S.D. New York.

Nov. 26, 2001.

Friedman Kaplan Seiler & Adelman LLP, by Bruce S. Kaplan, Robert S. Loigman, New York City, for Plaintiffs.

Warshaw, Burstein, Cohen, Schlesinger & Kuhn, LLP, by Alan S. Liebman, New York City, Ganfer & Shore, LLP, by Allen L. Finkelstein, New York City, for Defendants Stahl, Savastano, NewVest Capital Corp., NewVest Portfolio 96–A, L.L.C., NewVest Portfolio 96–B, L.L.C. and Han Kook, L.L.C.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, by Mary T. Hart, New York City, for Defendants Marks Paneth & Shron LLP, Eliach and Andrews.

## OPINION AND ORDER

SWAIN, District Judge.

Plaintiffs Daniel Z. Nelson, Lloyd Zeiderman and Harold Greenberg, former shareholders, officers and directors of NewVest Capital Corporation ("Plaintiffs"), bring this action against Rosalie Stahl, Scott G. Savastano, NewVest Capital Corporation ("NewVest"), NewVest Portfolio 96–A, L.L.C., NewVest Portfolio 96–B, L.L.C., Han Kook, L.L.C. (the "LLCs"), Marks Paneth & Shron LLP., Steven Eliach, Thelen, Reid & Priest LLP, Timothy E. Andrews, and Harry G. Heching ("Defendants"), alleging fraud in con-

nection with the assignment of their stock in NewVest, as well as their interests in the LLCs, to defendant Stahl. The complaint asserts claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"),[1] and Rule 10b–5 promulgated thereunder [2] (First Cause of Action), as well as a variety of state law claims (Second through Eleventh Causes of Action) as to which Plaintiffs assert the Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. section 1367. Before the Court are motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Federal Rule of Civil Procedure 9(b) for lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to plead fraud with particularity.[3]

For the reasons set forth below, Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted insofar as the complaint asserts federal securities law claims based on the transfer of interests in the LLCs. The Court will exercise supplemental jurisdiction with respect to Plaintiffs' claims asserted in the Second through Fifth Causes of Action, and declines to exercise supplemental jurisdiction with respect to the claims asserted in the Sixth through Eleventh Causes of Action. Defendants' motion is denied on all grounds with respect to Plaintiffs' federal securities law claims

relating to the transfer of Plaintiffs' shares of NewVest stock.

## BACKGROUND

 In evaluating a motion to dismiss, the Court is obliged to take as true the facts as alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). The Court is also permitted to take into account the contents of documents attached to or incorporated in the complaint, *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), as well as those documents which are "integral" to the complaint. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996). Here, the complaint refers in material respects to a certain Stockholders Agreement, dated April 1, 1994 ("Stockholders Agreement" or "St. Agrmt."), (Compl.¶¶ 27–28) and to the creation of the LLCs (*Id.* ¶¶ 18–20), all of which exist pursuant to limited liability company agreements ("LLC Agreements"). The Court finds that the Stockholders Agreement and the LLC Agreements are integral to the complaint and, accordingly, has considered their contents in evaluating the sufficiency of the complaint. The following factual recitation draws on the contents of those documents as well as that of the complaint.[4]

---

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

3. Defendants Savastano, NewVest and the LLCs moved pursuant to Rules 12(b)(1), 12(b)(6) and 9(b) to dismiss the complaint. Defendant Stahl initially moved pursuant to Rules 12(b)(1) and 9(b) and later moved jointly with Savastano, NewVest and the LLCs to dismiss the complaint pursuant to Rule 12(b)(1). Defendants Marks Paneth & Shron LLP, Eliach and Andrews joined the motions insofar as they asserted lack of subject matter

jurisdiction, and urged the Court not to exercise supplemental jurisdiction with respect to the Ninth Cause of Action asserted in the complaint. Although defendants Thelen Reid & Priest LLP and Harry G. Heching did not join the motions, the movants are referred to collectively in this opinion as "Defendants".

4. Defendants have proffered numerous affidavits and other documents, arguing that they belie certain of the material allegations in the complaint, or that they support inferences in the face of which plaintiffs' allegations cannot stand; the Court declines to consider them in

In 1994 Plaintiffs, along with defendants Stahl and Savastano, established NewVest. (Compl.¶¶ 1, 17, 27.) NewVest was organized for the purpose of engaging in real estate activities and the acquisition of low cost mortgages and other mortgage-related investments. (*Id.* ¶ 17.) In accordance with the Stockholders Agreement, New-Vest, which was a New York corporation, issued twenty per cent of its stock to each of Plaintiffs, and defendants Stahl and Savastano. (St. Agrmt. at 1.) The Stockholders Agreement provided that Plaintiffs and defendant Stahl would make additional investments by way of loans to other entities that would in turn invest in real estate. (*Id.* at 2–3.) The other entities were ultimately organized as LLCs. (Compl.¶¶ 34, 35.) The Stockholders Agreement provided that, upon the sale of investments, any net profit earned by the LLCs would be channeled through NewVest for distribution to stockholders. (St. Agrmt. at 2.) NewVest was entitled to receive a fee for acquiring mortgages and a servicing fee payable from income earned by the LLCs. (*Id.* at 3.)

After NewVest's [5] initial investments in June 1995, defendant Savastano was responsible for all of NewVest's operations and investments. (Compl.¶ 38.) In February of 1998, defendant Savastano presented NewVest's 1997 consolidated financial statements, which had been prepared under his supervision, to the corporation's shareholders. (*Id.* ¶ 39.) According to the financial statements, NewVest had a positive net worth of approximately $11,000,000, which included $5,000,000 in investment loans owed to defendant Stahl and Plaintiffs, at that time. (*Id.*) At approximately the same time, defendant Savastano prepared for plaintiff Zeiderman a financial report indicating that NewVest had a net worth (including repayment of investment loans) of approximately $10,000,000. (*Id.* ¶ 40.) In early 1998, defendant Stahl asked defendant Savastano to prepare a schedule comparing her rate of return to that of the other New-Vest shareholders. (*Id.* ¶ 41.) In March 1998, Savastano produced schedules showing that Plaintiffs had achieved a higher rate of return than defendant Stahl. (*Id.*)

Shortly after defendant Savastano had produced the schedules for Stahl, Savastano began indicating to NewVest's stockholders that NewVest was facing substantial financial difficulties, including a significant cash shortfall. (*Id.* ¶ 42.) In April 1998, Savastano delivered a schedule concerning a hypothetical sale that would leave an insufficient cash flow to continue NewVest's operations. (*Id.* ¶ 43.) On May 19, 1998, Savastano informed the board that an asset sale over 180 days would generate $4,000,000, not enough to repay the investors' loans, and leaving no profits. (*Id.* ¶ 45.) On May 19, 1998, Savastano made a capital call for $30,000 from each shareholder, which was followed up with a call on June 4, 1998, for $10,000 from each shareholder and a subsequent call on July 8, 1998, for $30,000 from each shareholder. (*Id.* ¶¶ 45–46.) Defendant Savastano faxed one of the capital call memoranda to plaintiff Greenberg. (*Id.* ¶ 45.)

At a July 8, 1998 board meeting, defendant Savastano painted a very bleak picture of NewVest's finances. (*Id.* ¶ 48.) Savastano did not disclose to Plaintiffs the fact that he had negotiated, or was in the process of negotiating, or had had a dia-

---

connection with the motions to dismiss. They are indicative of disputed issues of fact, resolution of which on the instant motions would be inappropriate.

**5.** It appears that the complaint refers to New-Vest Corp. and the LLCs, collectively, as "NewVest" in describing the NewVest-related investments. (Compl.¶¶ 1, 17, 39–41, 46–48.)

logue with respect to, the payment of NewVest's mortgage on a "Los Alamitos" property in California. (*Id.*) Although defendants Savastano and Stahl both knew that such a payoff would produce a substantial cash inflow to NewVest, and although Savastano was obligated to report to the stockholders concerning the status of NewVest's portfolio, defendants Savastano and Stahl withheld this information from Plaintiffs. (*Id.*)

A few weeks after the July 8, 1998, board meeting, plaintiff Greenberg spoke by telephone to Stahl's senior advisor and attorney who informed him that, unless Plaintiffs conveyed their interest in New-Vest to defendant Stahl for no consideration, Stahl's lawyers would sue Plaintiffs. (*Id.* ¶ 49.) Based on the false information provided to Plaintiffs concerning New-Vest's finances, and unaware of the pending payoff of the Los Alamitos mortgage, Plaintiffs, on July 28, 1998, assigned their interests in NewVest and its related LLCs to defendant Stahl for no consideration. (*Id.* ¶ 51.) On or about July 28, 1998, Plaintiffs executed a final Assignment Agreement, dated as of July 1, 1998 (the "Assignment Agreement"), pursuant to which the transfer was completed. (*Id.*) The Assignment Agreement also included a broad general release running between defendant Stahl, on the one hand, and Plaintiffs, on the other hand. (*Id.* ¶ 52.) The general release covered claims in connection with NewVest, the LLCs, and their business activities. (*Id.*)

On August 5, 1998, the Los Alamitos mortgage was paid off and NewVest received more than $800,000 in cash, which NewVest then distributed directly to defendants Stahl and Savastano. (*Id.* ¶ 58.) By late July 1999, Plaintiffs had not received their 1998 K–1 income tax schedules for NewVest and the related LLCs. (*Id.* ¶ 71.) Defendants engaged in a pattern of delay, repeatedly refusing to provide essential tax and financial information to Plaintiffs. (*Id.* ¶¶ 72, 74–77, 84.) Further, the Schedules K–1 ultimately received by Plaintiffs were flawed, in that they reported and allocated income improperly. (*Id.* ¶¶ 81, 84.) The improper allocation of ordinary income in NewVest's Schedules K–1 was designed specifically to transfer tax liability from Defendants to Plaintiffs. (*Id.* ¶ 84.) When Plaintiffs discovered the impermissible and erroneous allocations, they raised the issue with Defendants. (*Id.*) Rather than remedy the situation, Defendants refused to release information, delayed the process, and ultimately did not correct the errors. (*Id.*)

## DISCUSSION

### Rule 12(b)(1) Motion

■■■ A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. *See id.* Unlike a motion to dismiss under Rule 12(b)(6), a motion to dismiss for lack of subject matter jurisdiction is not directed to the claim's merits. *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–1 (2d Cir.1976).

■■■ "[W]hen [,however,] the contested basis of jurisdiction is also an element of the plaintiff's federal claim, the claim should not be dismissed for lack of subject matter jurisdiction." *Rivanna Trawlers Unlimited v. Thompson Trawlers,* 840 F.2d 236, 239 (4th Cir.1988) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90

L.Ed. 939 (1946)). In such cases jurisdiction must be exercised and a Rule 12(b)(1) motion denied, except if "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Bell,* 327 U.S. at 682, 66 S.Ct. 773; *see also Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188–89 (2d Cir.1996); *Keith v. Black Diamond Advisors, Inc.,* 48 F.Supp.2d 326, 331–32 (S.D.N.Y.1999).

■ In this case, Plaintiffs claim violations of the federal securities laws and seek damages and injunctive relief based on their allegations that Defendants engaged in acts, transactions and practices that operated as fraud upon Plaintiffs, and that Defendants made various untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs, and that instrumentalities of interstate commerce were employed in connection with the alleged fraud. The federal claims asserted in Plaintiffs' complaint are not "wholly insubstantial," nor do they appear to be "immaterial and made solely for the purpose of obtaining jurisdiction" over their asserted state law claims. The Court therefore finds dismissal of the complaint under Rule 12(b)(1) inappropriate and turns instead to the question of whether Plaintiffs' complaint states a claim upon which relief can be granted.

*Rule 12(b)(6) Motion*

■ As noted above, in deciding a motion to dismiss for failure to state a claim upon which relief may be granted, a court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor.

*Grandon,* 147 F.3d at 188. The court must not dismiss the action unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000).

The instant complaint asserts federal claims under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. Defendants assert that the complaint's allegations are insufficient to sustain these claims and that the First Cause of Action, which is the only federal law cause of action in the complaint, should therefore be dismissed.

Section 10(b) of the Securities Exchange Act provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm–Leach–Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C.A. § 78j(b) (West Supp.2001).

Securities and Exchange Commission Rule 10b–5 makes it "unlawful, in connection with the purchase or sale of any security, to make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Grace v. Rosenstock,* 228 F.3d 40, 46 (2d Cir.2000) (citing 17 C.F.R. § 240.10b–5(b)).

*Whether the Subject Interests are "Securities"*

■ A plaintiff must be a purchaser or seller of securities to have standing to sue for damages under Rule 10b–5. *Gurary v. Winehouse,* 190 F.3d 37, 46 n. 9 (2d Cir. 1999); *Caiola v. Citibank, N.A.,* 137 F.Supp.2d 362, 368 (S.D.N.Y.2001). The Exchange Act's definition of "security" reads in relevant part as follows:

> any note, stock, treasury stock, bond, security future, debenture, ... investment contract, ... any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing ....

15 U.S.C.A. § 78c(a)(10) (West Supp.2001).

Defendants contend that Plaintiffs' claim fails in its entirety as a matter of law because the plaintiffs' former interests in the LLCs did not constitute securities. Plaintiffs do not dispute the contention that the LLC interests are not securities for purposes of federal law. Rather, their opposition to the motion rests in pertinent part on the assertion that, because their NewVest corporate shares are securities and the LLC transactions were related to their investments in NewVest Capital Corporation, the Court should entertain their Rule 10b–5 action with respect to all of the related entities. (Pl.'s Post–Argument Mem. of Law in Opp'n to Defs. Mots. to Dismiss the Compl. at 7–9.) [6]

■ Plaintiffs have proffered no authority to support this consolidation theory and the Court has found none. The Court will, accordingly, examine separately the issues of whether a cause of action has been stated under Rule 10b–5 with respect to the transfer of the corporate shares, on the one hand, and transfer of the LLC interests, on the other. To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must plead that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 161 (2d Cir.2000); *see also Great Lakes Chemical Corp. v. Monsanto Co.,* 96 F.Supp.2d 376, 383 (D.Del. 2000). In *Landreth Timber Co. v. Lan-*

---

**6.** It is not clear that the First Cause of Action is plead in a manner that would support Plaintiffs' consolidated entity-based construct. The allegations relating to identification of the subject securities, transfer of such securities, and effect of the alleged fraud refer only to the transfer of "shares" of NewVest "stock". (*See* Compl. ¶¶ 86, 87, 90.) In a subsequent paragraph Plaintiffs' allege that as a direct and proximate result of the foregoing, Plaintiffs transferred their interests in the NewVest entities, for no cash consideration, which they otherwise would not have done. (*Id.* ¶ 92.) The complaint thus could be read to implicate the transfer of the LLC interests only as an element of damage in connection with Plaintiffs' claim that they were fraudulently induced to transfer their NewVest stock. Given that Plaintiffs appear to assert in their post-argument submission, that they can maintain their federal securities law claims in connection with the transfer of the LLC interests as well as in connection with the transfer of the corporate stock, the Court will analyze the sufficiency of the complaint in this regard with respect to the LLC interests as well as with respect to the NewVest stock.

*dreth,* 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), the Supreme Court made it abundantly clear that stock, whether in a publicly held company or a in a closely held corporation, constitutes a security governed by the federal securities laws. *See also* 15 U.S.C.A. § 78c(a)(10) ("stock" specifically included in definition of "security"). Plaintiffs' holdings in New-Vest Capital Corporation were ordinary common stock, and are thus subject to the provisions of Section 10(b) and Rule 10b–5.

■ The complaint asserts the remaining elements of the Section 10(b) cause of action in connection with the sale of New-Vest stock as well, alleging deliberate material misrepresentations, involving instrumentalities of interstate commerce, and detrimental reliance upon Defendants' alleged actions and omissions. (Compl., *passim.*) Accordingly, Plaintiffs' claim, as it relates to the corporate shares, states sufficiently a cause of action under Section 10(b) and Rule 10b–5 to survive Defendants' Rule 12(b)(6) motion.[7]

■ The Court thus turns to the question of whether a Rule 10b–5 cause of action can be maintained with respect to the interests in the LLCs through which the parties made their real estate investments. The Exchange Act's definition of security does not refer to membership interests in limited liability companies. The definition of a security is, however, "flexible," designed to adapt to the "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. W.J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Interpreting the term "investment contract" as used in the Securities Act of 1933, the *Howey* Court established a three-part "economic reality" test that has since been used to determine what types of interests constitute "securities" within the meaning of the Securities Act and the Exchange Act. An interest in an entity will constitute such a security if it represents: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others. *Id.* at 301, 66 S.Ct. 1100; *see also Landreth,* 471 U.S. at 689–90, 105 S.Ct. 2297. The Supreme Court has further instructed that, in defining the term "security," form should be disregarded in favor of substance and the emphasis should be on economic reality. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *see also Reves v. Ernst & Young,* 494 U.S. 56, 61, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). This approach "permit[s] the SEC and the courts sufficient flexibility to ensure that those who market investments are not able to escape the coverage of the Securities Acts by creating new instruments that would not be covered by a more determinate definition." *Reves,* 494 U.S. at 63 at n. 2, 110 S.Ct. 945.

In this case, the parties' real estate investments were made through the three LLC defendants. Section 4.01 of the LLC Agreement for NewVest Portfolio 96–A, L.L.C., the first of the NewVest LLCs, provides:

> *Management by Members.*[8] (a) the management of the Company's business

---

7. Securities fraud allegations under Section 10(b) and Rule 10b–5 are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). The Rule 9(b) element of Defendants' motion is discussed below.

8. The "Members" referred to in each of the LLC Agreements are the same as the "Stockholders" identified in the Stockholders Agreement—— namely Plaintiffs and defendants Stahl and Savastano. (*E.g.,* LLC Agreement of NewVest Portfolio 96–A, L.L.C. at 1; St. Agrmt. at 1.)

shall be vested in its Members and the Company shall not have any managers within the meaning of the Act. All decisions and actions on behalf of the Company shall require the prior affirmative or written consent of Members owning not less than 60 percent of the Member Percentages (herein referred to as 'Majority in Interest').

Because the LLC agreements grant their members direct authority over management of the entities, their structure precludes satisfaction of the third element of the *Howey* test—that the expectation of profit is "to come solely from the efforts of others." *Howey*, 328 U.S. at 301, 66 S.Ct. 1100.

 Plaintiffs allege that defendant Savastano was to manage the NewVest entities' investments. (Compl. at *e.g.* ¶¶ 16, 29, 38.) An LLC membership interest can be considered a security "when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control." *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir.1981). Yet, "[t]he delegation of rights and duties standing alone does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test." *Id.* at 423. So long as the member "retains ultimate control, he has the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager." *Id.* Furthermore, "the mere choice by a [member] to remain passive is not sufficient to create a security interest." *Rivanna Trawlers Unlimited v. Thompson Trawlers*, 840 F.2d 236, 240–41 (4th Cir.1988). Given the Supreme Court's instruction "to consider investment schemes in light of their economic realities," this Circuit has found that a scheme that was primarily "a means whereby participants could pool their own

activities, their money and the promoter's contribution in a meaningful way" was not an investment contract. *SEC v. Aqua–Sonic Products Corp.*, 687 F.2d 577, 582 (2d Cir.1982). The delegation of membership responsibilities, or the failure to exercise membership powers does not "diminish the investor's legal right to a voice in partnership matters." *Hirsch v. duPont*, 396 F.Supp. 1214, 1220 (S.D.N.Y.1975); *see also Keith v. Black Diamond Advisors, Inc.*, 48 F.Supp.2d 326, 334 (S.D.N.Y.1999). Indeed, if an investment scheme gives rise to a "reasonable expectation ... of significant investor control, a reasonable purchaser could be expected to make his own investigation of the new business he planned to undertake and the protection of the [Exchange Act] would be unnecessary." *Aqua–Sonic Products Corp.*, 687 F.2d at 585.

In *Keith v. Black Diamond Advisors, Inc.*, plaintiff brought a Section 10b–5 action in connection with his purchase of an interest in a New York limited liability company. The defendants moved to dismiss under Rule 12(b)(6) on the ground that plaintiff's interest in the LLC did not constitute a security under the Exchange Act. The court applied the test set forth in *Howey* and noted, that under the terms of that limited liability company's operating agreement, the plaintiff had rights: to manage the company along with the other members; to participate in a detailed cash flow distribution structure; and to call meetings. *Keith*, 48 F.Supp.2d at 333. The court held that such rights were "antithetical to the notion of member passivity" implicit in the *Howey* analysis. *Id.* Moreover, the court concluded that if, at the time of the investment, plaintiff "did not intend to be a passive investor," the interests could not be securities. *Id.* The *Keith* court held that the plaintiff's interest in the LLC was not a security under the Exchange Act.

■ Plaintiffs here owned, in the aggregate, 60% of the membership interests in the LLCs. The LLC Agreements gave their respective members sole control over all management decisions. Whether or not Plaintiffs in fact abdicated that authority (as they contend happened), the legal structure that they selected for their investments precludes a finding that they were relying, in the manner contemplated by *Howey*, on the entrepreneurial efforts of others to generate profits. Moreover, the terms of the LLC Agreements indicate that Plaintiffs did not intend to be passive investors. The LLC Agreements gave rise to reasonable expectations of investor control. In addition to the member-management provisions and requirements of member approval of all decisions of the LLCs, each of the LLC Agreements provides:

> Each Member shall have the right at all reasonable time[s] during usual business hours to audit, examine and make copies of or extracts from the books of account of the Company, Certificate of Formation, minutes of any meeting, tax returns, and other information regarding the affairs of the Company.

NewVest Portfolio 96–A, L.L.C. § 8.01; NewVest Portfolio 96–B, L.L.C. § 8.01; Han Kook, L.L.C. § 8.01. As defendant Savastano "maintained copies of the mortgages, mortgage notes, and other security instruments [related to the LLCs] at New-Vest's offices," (Compl.¶ 38), Plaintiffs had access to investment information and ultimate control over the LLCs' investment affairs. Accordingly, the LLC interests are not "securities" within the meaning of the Exchange Act and, to the extent Plaintiffs seek to maintain a federal claim premised on the transfer of their LLC interests, the complaint fails to state a cause of action.

*Statute of Limitations*

■ Defendants, asserting that a one-year statute of limitations applies to Plaintiffs' causes of action asserted in this lawsuit, argue that the action must be dismissed as untimely because, by July 1998, Plaintiffs were on at least inquiry notice of the matters complained of. Pointing to the minutes of regular NewVest meetings, Defendants assert that Plaintiffs' physical proximity to the NewVest entities' records, their access to day to day management of the entities' affairs, and certain other factors put them in a position to ascertain the true status of the matters as to which they claim they were misled. Plaintiffs dispute that they were on inquiry notice of the alleged fraud. The Court will not reach this issue, because the question of whether Plaintiffs should have discovered the fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact. *See, e.g., In re Executive Telecard, Ltd. Securities Litigation*, 913 F.Supp. 280, 283–84 (S.D.N.Y.1996) (holding that resolution of "inquiry notice" issue for purposes of securities fraud claim is inappropriate on a motion to dismiss where reasonable fact finder could conclude that plaintiffs were not on notice of fraud.)

■ The question on a motion to dismiss is whether " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000). On a motion to dismiss, the Court does not take into account extrinsic evidence or resolve factual disputes. Plaintiffs' allegations, viewed in the light most favorable to them, support an inference that the claims were brought timely. The motion to dismiss is

denied insofar as it asserts non-compliance with the statute of limitations.

*Rule 9(b) Motion*

*Rule 9(b) Pleading Requirements*

 Securities fraud allegations under Section 10(b) and Rule 10b–5 are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a party averring fraud or mistake to state with particularity "the circumstances constituting [the] fraud or mistake." Fed.R.Civ.P. 9(b). A complaint making such allegations must (1) specify the statements, oral or written, that the plaintiff contends were fraudulent, (2) identify the speaker or writer, (3) state where, when and to whom the statements were made, and (4) explain why the statements were fraudulent. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir.1995); *see also Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1127–28 (2d Cir.1994); *Rich v. Maidstone Financial, Inc.*, No. 98–2569, 2001 WL 286757, at *3 (S.D.N.Y. Mar.23, 2001).

*The Private Securities Litigation Reform Act*

 A complaint alleging securities fraud must also comply with the requirements of the Private Securities Litigation Reform Act ("PSLRA"). Defendants contend that the complaint fails to allege fraud with the particularly required. The PSLRA provides in relevant part as follows:

(1) Misleading statements and omissions
In any private action arising under this chapter in which the plaintiff alleges that the defendant—
(A) made an untrue statement of a material fact; or
(B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
(2) Required state of mind
 In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C.A. § 78u–4(b) (West Supp.2001). It is not sufficient for a plaintiff to plead scienter with allegations that are conclusory or based upon speculation. Rather, a "strong inference" may arise only where a plaintiff alleges either (1) facts showing that defendants had both motive and opportunity to commit fraud; or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 99–100 (2d Cir.2001); *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir.2000). As the Second Circuit explained, courts have found "strong inference" of scienter where the complaint alleged sufficiently that the defendants: benefitted in a concrete and personal way from the purported fraud; engaged in deliberately illegal behavior; knew facts or had access to information suggesting that their public statements were not accurate; or failed to check information they had a duty to monitor. *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.2000).

■ The complaint's detailed recitation of defendant Savastano's alleged statements, and corresponding allegations concerning Defendants' omissions, satisfy the PSLRA's particularity requirements. The complaint alleges that defendant Savastano, pursuant to an agreement with defendant Stahl to acquire and reallocate the equity of the NewVest entities, repeatedly misrepresented NewVest's financial condition by depicting it as a cash-starved company, knowing all along—but never disclosing to Plaintiffs—that the Los Alamitos payoff and other transactions would provide a substantial cash inflow to NewVest. (Compl. ¶ 57.) Rather than disclose this material information to Plaintiffs, defendant Savastano allegedly pressed Plaintiffs for additional capital contributions. (*Id.*) Specifically, the complaint asserts:

- On July 8, 1998, Savastano distributed a memorandum calling for $120,000 in additional capital. (*Id.* ¶ 46.) After painting a bleak picture of the company's finances, he reported on three specific properties, and then claimed that there was "nothing else to report" on the rest of NewVest's portfolio. (*Id.* ¶ 47.)
- At no point during the July 8, 1998 board meeting did Savastano disclose to Plaintiffs that the Los Alamitos mortgagor was considering paying off its mortgage for more than $5 million. (*Id.* ¶ 48.) Eight days after Plaintiffs assigned their stock and the LLC interests to Stahl, the loan was paid off. (*Id.* ¶ 58.)

The complaint is similarly particular in its allegations concerning defendant Stahl. The complaint alleges that Stahl knew of the impending transactions, and thus was aware of NewVest's actual financial condition, but nonetheless withheld this information from Plaintiffs to induce them to convey their NewVest stock and LLC interests to defendant Stahl without consideration. (*Id.* ¶ 48, 51.) Specifically, the complaint alleges that:

- Stahl knew that Plaintiffs had been told by Savastano that substantial additional capital was needed by NewVest on an immediate basis, and that the sale of NewVest's assets was unlikely to yield enough to pay the balance of the Investment Loans. Nonetheless, she never disclosed the fact that the Los Alamitos mortgage was about to be paid off. (*Id.* ¶ 50.)
- Stahl knew of Savastano's meetings in California and further negotiations concerning the payoff of the Los Alamitos mortgage. (*Id.* ¶ 56.) But Stahl, along with Savastano, purposefully withheld information about the Los Alamitos property from Plaintiffs in order to reinforce Savastano's representations concerning NewVest's precarious financial condition. (*Id.* ¶ 57.)

In this case, the complaint sufficiently and with particularity identifies how Defendants allegedly benefitted from their misrepresentation. (*Id.* ¶¶ 45–48, 50, 56–58.) The complaint identifies what Defendants allegedly failed to disclose and why they were required to disclose the information. The complaint satisfies the PSLRA requirements by identifying each allegedly misleading statement and by explaining why the statements were misleading. It sets forth the dates of the misrepresentations, what form they took, the exact content of the statements, and why the statements were false or misleading. The complaint also identifies the alleged omissions, detailing what was not disclosed and why Plaintiffs believe disclosure was necessary. The Court finds dismissal under Rule 9(b) inappropriate under these circumstances.

*The Release*

■ The complaint refers to the general release executed by Plaintiffs in connection with the transfer of their holdings in NewVest and the LLCs. (Compl.¶ 52.) Defendant Stahl argues that the Court should deem the release "integral" to the complaint and, on the basis of its provisions, dismiss this action as contractually barred. (Def. Stahl Mem. of Law in Supp. of Mot. to Dismiss Compl. at 21–26.) The Court declines to do so. A release, like any contract, can be vitiated if induced by fraud. *See, e.g., Bushkin, Gaims, Gaines, Jonas & Stream v. Garber,* 677 F.Supp. 774, 776 (S.D.N.Y.1988) (explaining that "the 'ritualistic' language of releases will not bar claims if the release was the result of fraud or mutual mistake"). Under New York law, a release may be set aside if induced by fraud. *Barrett v. United States,* 622 F.Supp. 574, 584 (S.D.N.Y.1985). To show fraud in the inducement, plaintiff must prove that: there was a misrepresentation of material fact; the representation was in fact false and was known to be false at the time it was made; the misrepresentation was made for the purpose of inducing plaintiff to rely on it; plaintiff did, in fact, rely on the misrepresentation; and plaintiff was caused injury as a proximate result of the misrepresentation or concealment. *Id.; Barrett v. United States,* 660 F.Supp. 1291, 1309 (S.D.N.Y.1987). Here, Plaintiffs allege that they were induced by fraud to assign their NewVest stock and related LLC interests to defendant Stahl. In connection with that very assignment, Plaintiffs executed the release upon which defendant Stahl now relies. In light of Plaintiffs' allegations concerning the circumstances leading up to the execution of the release, the release is not an appropriate basis for dismissal of the action because Plaintiffs may be able to establish that it should be abrogated as the product of fraud in the inducement. *See Aiena v. Olsen,* 69 F.Supp.2d 521, 539 (S.D.N.Y. 1999).

*Supplemental Jurisdiction*

■ In deciding whether to exercise supplemental jurisdiction over the state law claims asserted by Plaintiffs in the Second through Eleventh Causes of Action, the Court has discretion. *See Mauro v. Southern New England Telecomm., Inc.,* 208 F.3d 384, 388 (2d Cir.2000); *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). Section 1367(a) of Title 28, establishing the supplemental jurisdiction of the district court, provides, in part, that the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy." 28 U.S.C.A. § 1367(a) (West Supp. 2001). The "[d]istrict courts may [,however,] decline to exercise supplemental jurisdiction over a claim . . . if . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C.A. § 1367(c)(3) (West Supp.2001). The discretion implicit in the word "may" in subdivision (c) of Section 1367 allows the court to consider whether an exercise of jurisdiction is justified by the interests of judicial economy, convenience, fairness to litigants, and comity. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Purgess,* 33 F.3d at 138.

Here, the common law claims in the Second through Fifth Causes of Action relate directly to the assignment of NewVest stock that forms the basis of the Plaintiffs' First Cause of Action. The First Cause of Action alleges fraud in violation of Section 10(b) of the Exchange Act and Rule 10b–5, over which claim the

Court has exclusive jurisdiction. *Finkielstain v. Seidel*, 857 F.2d 893, 896 (2d Cir. 1988). As noted above, all of Plaintiffs' interests in the NewVest-related entities were transferred at the same time, pursuant to the same Assignment Agreement. (Compl.¶ 51.) Furthermore, it appears that issues as to the value of the NewVest stock transferred would implicate the value of the LLCs, in that the Stockholders Agreement provided that all net profits of the LLCs would be channeled through the corporation. (St. Agrmt. at 2.)

■ Plaintiffs' state law claims in the Second through Fifth Causes of Action are, accordingly, so related to their federal claims as to form part of the same case or controversy as required by section 1367(a). The Second Cause of Action asserts common law fraud and fraud in the inducement by defendants Savastano and Stahl, relating to the transfer of interests in the NewVest entities to defendant Stahl. The Third Cause of Action asserts breach of fiduciary duty under the parties' Stockholders Agreement by these defendants, also allegedly resulting in the conveyance of interests in NewVest to defendant Stahl. The Fourth Cause of Action asserts breach of contract by defendant Savastano, for failure to disclose information, which failure is alleged to have directly resulted in Plaintiffs' conveyance of their interests. The Fifth Cause of Action, against defendants Savastano and Stahl alleges breach of contract and implied covenant of good faith and fair dealing, again relating to the alleged failure to disclose material information relating to NewVest's investment portfolio. Because Plaintiff's federal claim as related to the transfer of corporate stock in NewVest has "survived defendants' motions to dismiss, plaintiffs' [related] state law claims cannot be said to predominate for purposes of Section 1367(c)(2)." *Marisol A. by Forbes v. Giuliani*, 929 F.Supp. 662, 686 (S.D.N.Y.1996). For the foregoing reasons, supplemental jurisdiction is proper and this Court hereby exercises that jurisdiction over plaintiffs' common law claims asserted in the Second through Fifth Causes of Action to the extent those claims relate to the transfer of interests in NewVest entities pursuant to the Assignment Agreement.

■ Judicial economy would not be served, however, by the exercise of jurisdiction over the state law claims in the Sixth through Eleventh Causes of Action, because resolution of the issues raised in those claims is not necessary to resolution of the one federal claim. Moreover, these common law claims do not arise from the same nucleus of operative facts as the surviving federal securities law claim—the assignment of NewVest stock. *See Burke v. Dowling*, 944 F.Supp. 1036, 1070 (E.D.N.Y.1995) (court would not exercise supplemental jurisdiction over state law claims arising from securities transactions distinct from those transactions from which federal claims arose). Plaintiffs' Sixth through Eleventh Causes of Action involve issues of fact and law far more wide-ranging, and dealing with a larger group of persons, than those implicated by the federal claims. The proof required to decide these state law claims is thus much different from, and to a significant extent broader than, that required for resolution of the federal claims. *See McConnell v. Costigan*, No.00–4598, 2000 WL 1716273, at *4–5 (S.D.N.Y.2000). The parties have a convenient, competent state forum in which these state law issues can be resolved and there is nothing unfair in requiring them to look to that forum. Plaintiffs' common law claims as asserted in the Sixth through Eleventh Causes of Action will therefore be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are denied, insofar as brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and Federal Rule of Civil Procedure 9(b), with respect to Plaintiffs' First through Fifth Causes of Action, alleging fraud in violation of Section 10(b) of the Exchange Act and Rule 10b–5, in so far those causes of action relate to the transfer of interests in NewVest and the LLCs pursuant to the Assignment Agreement. The motion to dismiss is granted pursuant to Rule 12(b)(6) with respect to the First Cause of Action insofar as Plaintiffs' federal securities law claim is premised on the transfer of their interests in the LLCs. The Court declines to exercise supplemental jurisdiction over Plaintiffs' Sixth through Eleventh Causes of Action. Accordingly, the state law claims asserted in the Sixth through Eleventh Causes of Action are dismissed without prejudice. In that the only claims asserted against defendants Marks Paneth & Shron LLP, Steven Eliach, Timothy E. Andrews, Thelen Reid & Priest LLP and Harry G. Heching appear in the Ninth, Tenth and Eleventh Causes of Action, this case is dismissed as against those defendants, without prejudice, in its entirety and the caption shall be amended accordingly.

IT IS SO ORDERED.