### SST GLOBAL TECHNOLOGY, LLC, Plaintiff,

v.

### Jane K. CHAPMAN, as Executrix of the estate of John Chapman, Deceased, David J. Castiel, Jill Stern, Ellipso, Inc., and Virtual Geosatellite, LLC, Defendants.

#### No. 02 CIV. 7687(CSH).

United States District Court, S.D. New York.

July 14, 2003.

**446**

Brian C. Wille, Esq., Kostelanetz & Fink, LLP, New York City, for Plaintiff.

Mark S. Zaid, Esq., Krieger & Zaid, PLLC, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Defendants move pursuant to Fed. F. Civ. Proc. 12(b)(3) to have this action dismissed for improper venue or transferred to the United States District Court for the District of Columbia, or in the alternative for an order staying the action pending the outcome of related state proceedings in Delaware and the District of Columbia.

### I. BACKGROUND

Plaintiff Peter Sahagen [1] is an investor; defendant David Castiel is an inventor and entrepreneur in the technology sector. Although the dealings between Sahagen and Castiel become quite complicated when viewed in detail, in essence Sahagen invested in a venture formed by Castiel and now, dissatisfied with the results of that venture, alleges that his decision to invest was based on incorrect and misleading information. Specifically, Sahagen alleges that Castiel and his associates represented that a license issued by the Federal Communications Commission ("FCC"), a necessary prerequisite of the venture's goal to launch telecommunications satellites, was properly obtained and valid, when in fact it was not and was subsequently revoked. (Compl. at 6–15.) Sahagen brings various claims premised on the alleged misrepresentations regarding the status of the FCC license, including claims for violation of Section 10(b) of the Securities Exchange Act of 1934, common law fraud, negligent misrepresentation and breach of fiduciary duty; Sahagen seeks the return of his

1. Although SST Global Technology, LLC ("SST Global") is the named plaintiff, Sahagen is the sole owner of SST Global and the primary actor in this case and the related proceedings. For the sake of simplicity (and not as an exercise in corporate veil piercing) I will refer to the plaintiff as "Sahagen."

investment, damages, and the imposition of a constructive trust. *Id.* at 15–21. In addition to Castiel, the complaint names a company controlled by Castiel and two individuals affiliated with companies controlled by Castiel as defendants.

The particulars of the dealings between Sahagen and Castiel are more complicated, involving a number of companies and ownership arrangements. Castiel developed innovative satellite technology and formed various companies, including Virtual Geosatellite Holdings, Inc. ("VGHI"), Ellipso, Inc. ("Ellipso"), and Virtual Geosatellite, LLC ("Virtual Geo"), for the purpose of using that technology to create a global fixed satellite service system. Castiel controls VGHI, Ellipso, and Virtual Geo (VGHI and Ellipso own, respectively, 63.46% and 11.54% of Virtual Geo). *See VGS, Inc. v. Castiel,* No. CIV.A.–17995, 2003 WL 723285, at *4 (Del.Ch. Feb. 28, 2003). Castiel, through VGHI and Ellipso, contributed licensed intellectual property to Virtual Geo.

Sahagen, through Sahagen Satellite Technology Global, LLC ("SST Global") (an investment corporation wholly owned by Sahagen), entered into a Stock Purchase Agreement pursuant to which he purchased shares of Ellipso common stock representing approximately 25% of the shares in the company for $4.2 million. (Compl. at 11.) The Stock Purchase Agreement includes an express warranty attesting to the validity of the FCC license.[2] Sahagen also separately purchased additional shares of Ellipso from one of its stockholders, John Chapman, for $742,770. (Compl. at 11.) Sahagen also, pursuant to a Unit Purchase Agreement, purchased LLC units representing 25% of the total units of Virtual Geo for $5 million.[3] (Compl. at 11.)

Virtual Geo was managed by a three-person Board of Managers, which consisted of Castiel, Sahagen, and Tom Quinn (appointed by Castiel-controlled VGHI). Unhappy with Castiel's management of Virtual Geo, Sahagen and Quinn secretly executed a written consent to the merger of Virtual Geo with and into a new company that they formed, Virtual Geosatellite, Inc. ("VGS Inc."). As discussed in greater detail, *infra,* it is this attempted merger that formed the catalyst for the initiation of litigation in Delaware and the District of Columbia. Sahagen filed suit in Delaware seeking a declaration that the merger was valid; Castiel filed suit in the District of

---

**2.** It provides, in relevant part, at § 2.07 of the Agreement:

> *Licenses.* Mobile Communications Holdings, Inc. ("MCHI") [parent company of Ellipso] has been licensed by the U.S. Federal Communications Commission (the "FCC") to construct, launch and operate a mobile satellite service system pursuant to *Order and Authorization,* 12 FCC Rcd 9663 (1997) (the "FCC License"). Except as set forth in the Disclosure Schedule, the FCC License is in full force and effect, MCHI is in compliance in all material respects with all the requirements under the FCC License, and, to the knowledge of Seller, no event has occurred with respect to the FCC License which permits, or after notice or lapse of time or both would permit, revocation or termination thereof or would result

in any other material impairment of the rights of MCHI under the FCC License or would materially impair MCHI's ability to comply with the FCC License requirements.... (Willie Aff. Ex. E.)

**3.** The Unit Purchase Agreement references the FCC license, but does not contain an express warranty of the same detail and scope as that found in the Stock Purchase Agreement pursuant to which Sahagen purchased shares in Ellipso. The Unit Purchase Agreement provides in § 2.08: *"Licenses.* The LLC has applied for a license to the U.S. Federal Communications Commission (the "FCC") to launch and operate VIRGO, a global fixed-satellite service system employing nongeostationary satellites in subgeosynchronous elliptical orbits dated January 8, 1999 (the "FCC Application")." (Willie Aff. Ex. F.)

Columbia seeking injunctive relief and a declaration that the merger was invalid.

The action initiated by Castiel before the District of Columbia Civil Division is presently stayed out of deference to the proceeding before the Delaware Court of Chancery. (Zaid Decl. Ex. D.) In the Delaware case, a trial was held from June 15 to June 23 and the merger was rescinded as invalid by court order in August 2000. *V.G.S., Inc. v. Castiel*, No. CIV.A.–17995, 2000 WL 1277372 (Del.Ch. Aug. 31, 2000) (unpublished opinion), *aff'd*, 781 A.2d 696 (Del.2001) (hereinafter "Merger Opinion"). This did not, however, end the litigation because the parties had filed cross and cross-counterclaims seeking additional redress in the Delaware case and these cross and cross-counterclaims were not resolved in the August 2000 Order. Summary judgment on all but two of these cross and cross-counterclaims was subsequently granted to Castiel; the cross-counterclaims that remain await resolution at trial. *VGS, Inc. v. Castiel*, No. CIV.A–17995, 2003 WL 723285 (Del.Ch. Feb 28, 2003), *reh'g granted by*, *VGS, Inc. v. Castiel*, No. CIV.A–17995, 2003 WL 1794210 (Del.Ch. Mar. 27, 2003).

The present claim arises from the same underlying series of events as the Delaware and District of Columbia actions, and one of the cross-counterclaims brought by Sahagen against Castiel in the Delaware

action is substantively similar to the claims Sahagen brings before this Court. A cross-counterclaim for fraudulent and negligent misrepresentation based on Castiel's alleged misrepresentations (in contradiction to an express warranty) regarding the status of the FCC license brought by Sahagen in the Delaware action is presently pending trial in Delaware. The claims in the present case are likewise grounded in the alleged misrepresentations by Castiel regarding the FCC license and include claims for negligent and fraudulent misrepresentation. These similarities between the Delaware action and the present action are the basis for the stay motion brought by Castiel and resolved by this Opinion.[4] A detailed review of the procedural history of the claims brought in Delaware, the District of Columbia, and the present action follows.

## II. PROCEDURAL HISTORY

### 1. The Delaware case.

In an action filed in the Delaware Chancery Court, Sahagen[5] sought a declaratory judgment that the "merger" effected by Sahagen and fellow Virtual Geo board member Quinn (that essentially removed the company from Castiel's control) was valid. Castiel[6] filed a counterclaim against Sahagen and Quinn alleging that they had breached their fiduciary duty of loyalty as board members of Virtual Geo.

---

4. The brief for plaintiff characterizes defendant's motion as one for abstention. In the circumstances of the case, there is no substantive difference between a stay and abstention, and I will use both terms in the Opinion.

5. The underlying action was filed by VGS, Inc., an entity created by Sahagen and Quinn as a vehicle for effecting a merger of Virtual Geo. A counterclaim was brought by Castiel against VGS Inc., Sahagen, Quinn, Neil Howard (a former Ellipso executive), and SST Global. For purposes of simplicity, the Sahagen interests are referred to merely as "Sahagen".

6. Sahagen (through VGS, Inc.) brought his initial claim against defendants David Castiel (individually), VGHI, and Ellipso. VGHI and Ellipso subsequently filed a counterclaim and became counterclaim plaintiffs. Virtual Geo intervened and filed a counterclaim as a counterclaim plaintiff-intervenor. And Sahagen's cross-counterclaims are filed against Castiel, VGHI, Ellipso, Virtual Geo, and MCHI. Although Castiel does not individually bring a counterclaim, Castiel has a significant interest in the organizations that have (VGHI, Ellipso and Virtual Geo) and, for purposes of simplicity, the Castiel interests are accordingly identified as merely as "Castiel".

Sahagen then filed an eleven-count cross-counterclaim against Castiel, alleging numerous claims discussed in detail below.

In June 2000, a trial was held on the issue of the validity of the merger. Following trial, the Delaware Chancery Court ruled that the merger was void and it was rescinded. *V.G.S., Inc. v. Castiel,* No. CIV.A–17995, 2000 WL 1277372 (Del.Ch. Aug. 31, 2000) (unpublished opinion), *aff'd,* 781 A.2d 696 (Del.2001). The counter and cross-counterclaims were not addressed in the Merger Opinion.

The Delaware Court of Chancery subsequently took up the counter and cross-counterclaims that were lodged in the initial action, but not addressed in the Merger Opinion. Because these claims form the basis of Castiel's present motion, I review them in detail.

Castiel counterclaim:

● Breach of fiduciary duty (Castiel alleges that Sahagen and Quinn breached their fiduciary duty of loyalty as managers of Virtual Geo when they attempted to take control of Virtual Geo by effecting a secret merger of Virtual Geo into and with Virtual Geosatellite Holdings, Inc.).

Sahagen cross-counterclaims:

● Common law fraud (Sahagen alleges that he was fraudulently induced into investing in Virtual Geo and Ellipso based on various misrepresentations made by Castiel, including misrepresentations about the status of the FCC license) (Counts I, X).

● Negligent misrepresentation (Sahagen alleges that he was fraudulently induced into investing in Virtual Geo and Ellipso based on various misrepresentations made by Castiel, including misrepresentations about the status of the FCC license) (Counts II, XI).

● Breach of fiduciary duty (Sahagen alleges that Castiel engaged in misman-agement and waste as a manager of Virtual Geo) (Count III).

● Aiding and abetting breach of fiduciary duty (Sahagen alleges that Ellipso, VGHI, and Virtual Geo aided and abetted Castiel's breach of fiduciary duties) (Count IV).

● Civil conspiracy (based on the fraud alleged in Counts I, X) (Count V).

● Constructive trust (Sahagen seeks to have a constructive trust imposed on Virtual Geo) (Count VI).

● Injunctive relief (Sahagen seeks to enjoin Castiel from exercising control over Virtual Geo funds and business) (Count VII).

● Derivative claim for breach of fiduciary duties (Sahagen claims, on behalf of Virtual Geo, that Castiel breached fiduciary duties to Virtual Geo by engaging in waste and mismanagement) (Count VIII).

● Derivative claim for breach of fiduciary duties (Sahagen claims, on behalf of Ellipso, that Castiel breached fiduciary duties owed to Ellipso by engaging in waste and mismanagement) (Count IX).

In an opinion dated February 28, 2003, the Delaware Court of Chancery granted summary judgment to Castiel dismissing all Sahagen's claims except for Count IX, with regard to which the court declined to rule because Castiel had not briefed the issue. *VGS, Inc. v. Castiel,* No. CIV.A.–17995, 2003 WL 723285 (Del.Ch. Feb. 28, 2003), *reh'g granted by, VGS, Inc. v. Castiel,* No. CIV.A–17995, 2003 WL 1794210 (Del.Ch. Mar. 27, 2003). Sahagen moved for reargument and on March 27, 2003, the court granted reargument narrowly with regard to the claims for fraudulent and/or negligent misrepresentation relating to the status of the FCC license and the express warranty in § 2.07 of the Stock Purchase Agreement (as set forth in Counts I, X and

II, XI).[7] 2003 WL 1794210 (Del.Ch. Mar. 27, 2003). The Court concluded that a "trial is necessary to resolve" issues relating to the alleged misrepresentations involving the FCC license and the § 2.07 warranty and the action, now whittled narrowly to the common law fraud and negligent misrepresentation claims as related to these issues, is presently awaiting trial. *Id.* at *2.

## 2. The District of Columbia case.

Castiel (through VGHI, Virtual Geo, and Ellipso) brought an action before the District of Columbia Civil Division on April 24, 2000, challenging the alleged "merger" of Virtual Geo into VGS Inc. (Compl. in Wille Aff., Ex. J.) Specifically, Castiel sought injunctive relief (in the form of a temporary restraining order and preliminary injunction) to prevent Sahagen from accessing Virtual Geo's bank accounts and holding out VGS Inc. as an entity incorporating the interests of Virtual Geo, and damages. (Compl. at 12–26.) The complaint sought a declaration that the merger was invalid and alleged that Sahagen and certain affiliates had engaged in conversion, civil conspiracy to defraud, fraud and concealment, interference with prospective business advantage, breach of the duty of loyalty, and unjust enrichment in effecting the "merger" and subsequently taking certain actions based on the presumption that the merger was valid. *Id.*

On May 9, 2000, the Superior Court of the District of Columbia issued a stay conditioned upon the Delaware court conduct-

---

7. In its Opinion granting reargument, the court relied upon the express warranty found in § 2.07 of the Stock Purchase Agreement pursuant to which Sahagen purchased Ellipso stock. The court suggests that the Stock Purchase Agreement accounts for *all* of Sahagen's investments at issue in that action: "The Sahagen Parties invested $9.2 million in Ellipso, Inc. and Virtual Geosattellite [sic] Holdings, Inc. ("Virtual Geo") [I assume that the court is referencing Virtual Geosatellite, LLC] under the terms of *a written agreement* dated as of January 29, 1999 (the "Stock Purchase Agreement")." 2003 WL 1794210 at *1 (Del.Ch. Mar. 27, 2003) (emphasis added). The court did not reference the Unit Purchase Agreement pursuant to which Sahagen purchased shares in Virtual Geo and which does not contain the same express warranty as found in § 2.07 of the Stock Purchase Agreement.

I cannot discern why the Court of Chancery treated Sahagen's entire investment as having been made pursuant to a single contractual document, when upon my review of the record his purchase of shares in Ellipso and Virtual Geo appears to have been made pursuant to two contracts with different warranty provisions—namely, a Stock Purchase Agreement (Ellipso) and a Unit Purchase Agreement (Virtual Geo). As such, it is not clear to me whether the Court of Chancery's grant of reargument, based expressly on the existence of the § 2.07 warranty, extends to the entire amount of Sahagen's investment at issue in that case ($9.2 million) or only to those portions of his investment that were made pursuant to a contract containing the § 2.07 warranty language (which, upon my review of the record, would appear to include only the Stock Purchase Agreement—the $4.2 million that Sahagen invested in Ellipso).

Notably, at oral argument on the motion for summary judgment, counsel for Castiel distinguished between the claims relating to the contractual warranty in the Ellipso Stock Purchase Agreement and other claims relating both to the Ellipso and the Virtual Geo transaction—"There is one part [of Mr. Sahagen's claim that there was fraud in the inducement of his investments in Ellipso and Virtual Geo] which relates to Ellipso, which is a breach, or where Mr. Sahagen's complaint and his opposition to the motion contend that there was a false representation that was contained in the January 29, 1999 agreement by which Mr. Sahagen invested in Ellipso. That representation in the agreement is Exhibit A to the reply, paragraph 2.07, in which a representation and warranty is made by Ellipso concerning the status of the FCC license. ... [T]here are a number of other claims that ... the Sahagen parties make as to fraud in inducing his investment *both* in Ellipso *and* in Virtual Geo." (Trans. at 5–8 in Zaid Decl. Ex. F.) (emphasis added).

ing a preliminary injunction hearing within seventeen days of the issuance of the stay. The court's decision to issue a stay was based on the fact that the Delaware case was filed first, "its adjudication necessitated a determination of the validity of the merger and the conversion," and comity demanded deference. (Mem. and Order in Zaid Decl., Ex. D.) In a Memorandum & Order dated October 30, 2000, the court denied a motion by Castiel to lift the stay based on its determination that comity continued to require deference to the Delaware proceeding. *Id.*

### 3. The S.D.N.Y. case.

In the present action, plaintiff Sahagen (through SST Global) brings claims against defendants John Chapman,[8] Jill Stern and David Castiel (individually) and Ellipso and Virtual Geo (both controlled by Castiel). (Compl. at 3–5.) Castiel, Ellipso and Virtual Geo are parties to the actions in the ongoing litigation in Delaware and the stayed action in the District of Columbia. John Chapman and Jill Stern are not named parties in either the Delaware or District of Columbia actions. They were both, however, affiliated in a professional capacity with named parties. Chapman served as a member of Ellipso's board; Stern was formerly in-house counsel for Ellipso. Plaintiff alleges that Chapman and Stern participated in soliciting Sahagen's investment in Ellipso and Virtual Geo. (Compl. at 2.)

Because Castiel's motion is grounded in large part on the identity of claims and parties between the present action and the Delaware and District of Columbia actions set forth above, the claims set out in the Complaint in the present case are presented in detail.

Plaintiff's claims:

- Violation of Section 10(b) of the Securities Exchange Act of 1934 (Sahagen claims that he would not have invested in Ellipso or Virtual Geo except for misrepresentations about the status of the FCC license and related matters made by defendants in connection with his purchase of shares in those companies) (Count I).

- Common law fraud (Sahagen alleges that fraudulent misrepresentations by defendants relating to the FCC license induced his investment in Ellipso and Virtual Geo) (Count II).

- Negligent misrepresentation (Sahagen alleges that negligent misrepresentations by defendants relating to the FCC license induced his investment in Ellipso and Virtual Geo) (Count III).

- Breach of (common law) fiduciary duty (Sahagen alleges that Chapman, Castiel and Stern acted as his fiduciary in connection with his investment decisions and that they breached this duty by making misrepresentations regarding the status of the FCC license) (Count IV).

- Claim for imposition of a constructive trust (Sahagen alleges that all defendants but Stern are in possession of assets that belong to him and requests that the court impose a constructive trust over these assets) (Count V).

Plaintiff seeks actual, consequential and incidental damages of $40 million, punitive damages, the imposition of a constructive trust, and costs and fees.

### III. DISCUSSION

Defendants move pursuant to Rule 12(b)(3), Fed. R. Civ. Proc., to have this

---

**8.** Mr. Chapman is deceased; Jane Chapman is named as a party in her capacity as the executrix of his estate.

action dismissed for improper venue or transferred to the United States District Court for the District of Columbia. Defendants move in the alternative to have the present action stayed pending the outcome of the state proceedings (the Delaware case and the District of Columbia case). I consider defendants' alternative motions in that order.

## A. Venue

 Defendants argue that, pursuant to 28 U.S.C. § 1406(a), this case must be dismissed for improper venue or transferred to the United States District Court for the District of Columbia. Section 1406(a), the ground for dismissal or transfer relied upon by defendant, provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The threshold inquiry, then, is for the Court to determine whether the case is indeed in the "wrong" district, as that phrase is used in the statute. Although the parties have argued under the standards set forth in both 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 78aa, I find it necessary only to analyze the propriety of venue under the latter. Venue with regard to securities law claims under the Securities Exchange Act is controlled exclusively by 15 U.S.C. § 78aa, without regard to the general venue provisions of 28 U.S.C. § 1391. *Blass v. Capital Intern. Security Group*, No. 99–5738, 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001) ("Venue of claims brought under the Exchange Act are governed exclusively by section 27, not by the general venue provisions of 28 U.S.C. § 1391."). *See also Zorn v. Anderson*, 263 F.Supp. 745, 747 (S.D.N.Y.1966). Where there are state claims asserted in addition to securities law claims governed by the venue provisions of § 78aa, a finding that venue is appropriate with regard to the securities law claims is sufficient to establish venue with regard to all claims. *Greenwood Partners v. New Frontier Media Inc.*, No. 99–9099, 2000 WL 278086, at *8 (S.D.N.Y. Mar. 14, 2000) ("[B]ecause plaintiffs have met their burden of proving venue for their securities law claim, we need not reach the question of whether they can independently base venue on their state law claims."); *Gordon v. Hohmann*, 434 F.Supp. 629, 631 (S.D.N.Y.1977) ("As venue is proper for the claims alleged pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934, venue is also proper for the common law claims advanced by the plaintiffs.").[9] I therefore

---

**9.** Even if I were to consider plaintiff's state claims separately, I would conclude that venue is appropriately lodged. Section 1391(b)(2) provides that in a proceeding where there is federal question jurisdiction, an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." "The venue statute ... does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Astor Holdings, Inc. v. Roski, III*, No. 01–1905, 2002 WL 72936, at *8 (unreported decision) (S.D.N.Y. Jan. 17, 2002). *See also Rothstein v. Carriere*, 41 F.Supp.2d 381, 387 (E.D.N.Y.1999), citing *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996) ("And plaintiff need not establish that the Eastern District of New York has 'the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.'"). Thus, it is not controlling that another judicial district has more contacts with the dispute; to sustain the selected venue, it is required only that "a substantial part of the events" relating to the dispute occurred in this judicial district.

consider whether venue is properly lodged pursuant to § 78aa.

Section 78aa provides that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business...." *See also Fogel v. Wolfgang,* 48 F.R.D. 286, 289 (S.D.N.Y. 1969) (" 'Section 27 of the Securities Exchange Act provides that a suit to enforce liabilities under the Act or any rule or regulation thereunder may be brought in any district wherein any act or transaction constituting the violation occurred.' ") (quoting *Wyndham Associates v. Bintliff,* 398 F.2d 614, 620 (2d Cir.1968)). The language referring to where "any act or transaction constituting the violation occurred," has been held to apply to civil cases. *Grossman v. Young,* 70 F.Supp. 970 (S.D.N.Y.1947). It is further settled that "any nontrivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue." *Greenwood Partners v. New Frontier Media Inc.,* No. 99–9099, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000). Additionally, " '[t]he act or transaction committed within the district need not constitute the core of the violation, but should be an important step in the fraudulent scheme.' " *Id.* (quoting *Como v. Commerce Oil Co., Inc.,* 607 F.Supp. 335, 341 (S.D.N.Y.1985)).

In the present case, plaintiff has submitted affidavits from Neel Howard, a former executive with Ellipso who was personally involved in soliciting Sahagen's investment in Ellipso and Virtual Geo, and from Sahagen. Howard recounts making various calls to Sahagen in New York and meeting various times with Sahagen in New York. (Howard Aff. at 2–3.) He indicates further that these telephone calls and meetings were conducted for the purpose of securing Sahagen's investment in Ellipso and Virtual Geo. *Id.* Sahagen likewise recalls "[a]t least five of these meetings [with Ellipso senior management] took place with Chapman at his New York law office and/or at other locations in New York. In addition to those meetings, I participated in at least three other meetings ... with Ellipso's senior management in New York." (Sahagen Aff. at 4.) He states that the purpose of these meetings was to discuss his investment in Ellipso and Virtual Geo and that during the course of the meetings "Chapman, Castiel and Stern made several representations ... about Ellipso and its FCC license...." *Id.*

These affidavits demonstrate that many of the representations and omissions alleged to constitute a violation in this case either occurred during meetings located in New York or telephone conversations to Sahagen in New York. As such, and be-

---

In determining what constitutes a "substantial part of the events" relating to a dispute, courts in this circuit have been willing to find that venue is appropriate even where based solely on communications (involving the dispute) directed by a party to the forum state. *E.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 153–54 (2d Cir.2001). The state claims in this action are based on what information, specifically relating to the status of the FCC license, was provided to Sahagen during his decision to invest in Ellipso and Virtual Geo. Through the affidavits discussed *infra,* pp. 13–14, plaintiff has submitted evidence that the alleged misrepresentations and omissions central to his claims in this case occurred in New York. Thus, were I to consider venue independently with regard to plaintiff's state claims, I would conclude that the standard set forth in § 1391(b)(2) is satisfied; plaintiff has shown that "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

cause plaintiff's claim is that defendants violated Rule 10(b)'s prohibition against making "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security," 17 CFR 240.10b–5, I find that plaintiff has shown that an "act or transaction constituting the violation" occurred in New York. This finding is supported by cases involving allegations of securities fraud under Rule 10(b) that have held that venue is properly located in a district where the alleged misrepresentations or omissions occurred. *Blass,* 2001 WL 301137 at *3 (holding that venue was proper where "as part of the scheme to defraud investors, defendants ... made false and misleading representations in this district...."); *Ethanol Partners Accredited, et al. v. Wiener, Zuckerbrot, Weiss & Brecher, et al.,* 617 F.Supp. 308, 310–11 (E.D.Pa.1985) (holding in a securities fraud action that "[a]fter considering the affidavit produced by plaintiffs, I find that plaintiffs, for the purpose of venue, have established that purported material misrepresentations were made to plaintiffs in this district. Therefore, I find venue proper within this district and that defendants' reliance upon 28 U.S.C. § 1406, *supra,* which is applicable where venue is not found, is misplaced.").

The present case cannot, therefore, be considered to be in the "wrong" district, 28 U.S.C. § 1406(a), because venue is proper under 15 U.S.C. § 78aa. Accordingly, dismissal or transfer is not warranted under § 1406(a). Having already decided that venue is proper under § 78aa, I find it unnecessary to review with particularity the effect of the forum selection clauses contained in the Unit Purchase Agreement and the Stock Purchase Agreement.

**B. Dismissal or Stay**

Defendants move in the alternative to have the present action stayed pending resolution of the Delaware and District of Columbia cases on the grounds that "[c]omity, efficiency, and fairness to the parties all require that this suit ... be stayed...." (Def.'s Brief at 7.) Defendants argue that the analysis to be applied in determining whether to stay an action due to the pendency of a related lawsuit is the five-factor test (which considers the interests of the plaintiff, defendant, courts, persons not party to the litigation, and the public) used in *Kappel v. Comfort,* 914 F.Supp. 1056 (S.D.N.Y.1996), and similar cases.

■ Plaintiff argues in its brief that the test set out in *Kappel* does not govern applications for the stay of a federal action based on the existence of a pending civil state action and that the proper analysis is instead that set forth in federal abstention doctrine. Plaintiff argues further that abstention is not permitted where, as here, plaintiff brings a claim under Rule 10(b)(5), with regard to which federal jurisdiction is exclusive.

In their Reply Brief, defendants (apparently abandoning their initial argument based on the *Kappel* test) urge that abstention is warranted under the six-factor test originating in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and applied in *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325 (2d Cir.1986).

As a threshold matter, I note that, contrary to the position taken by defendants in their main brief, the test set out in *Kappel* does not apply here because the present case involves an application for a

stay in the context of a civil action where the concurrently pending actions upon which the application for a stay is based are pending in state court. The test used in *Kappel* has been applied to stay a federal action in light of a concurrently pending *federal* action (either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law), *e.g., Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784 (2d Cir.1986), a concurrently pending *criminal* action in state court, *Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36 (S.D.N.Y. 1993), or a concurrently pending action in a *foreign jurisdiction. Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880 (S.D.N.Y.,1991). The question presented here, whether to stay proceedings in a federal action based on the existence of a concurrently pending state civil action, is governed by the principles of federal abstention doctrine. *See generally Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (listing factors a federal court should consider before dismissing a case because of a parallel suit in a state court); *Alkoff v. Gold,* 611 F.Supp. 63, 65 (S.D.N.Y.1985) (noting that a "motion to have this Court dismiss, abate or stay the instant proceeding amounts to a request to have the Court use its discretion to abstain or decline from exercising its jurisdiction."). Accordingly, I analyze defendants' request for a stay under federal abstention doctrine and not under the test set out in *Kappel.*

An additional question, not briefed by the parties,[10] arises with regard to the state claims only—namely, whether this Court should exercise supplemental jurisdiction over the state claims in this case pursuant to 28 U.S.C. § 1367. *See generally McConnell v. Costigan,* No. 00–4598,

2000 WL 1716273, at *3–7 (S.D.N.Y. Nov. 16, 2000) (holding that abstention not warranted with regard to federal ERISA claim, but declining to exercise supplemental jurisdiction over related state law claims). If supplemental jurisdiction is not extended over the state claims, then they must be dismissed. Although the parties have not briefed the issue, defendant's arguments and presentation of the extended procedural history in this case suggest that the exercise of supplemental jurisdiction over the state claims may not be warranted. Because "[f]ederal courts must take seriously the limited nature of their subject matter jurisdiction," and have "an independent duty to examine [their] jurisdiction," *Hoffman v. Empire Blue Cross and Blue Shield,* No. 96–5448, 1999 WL 782518, at *9 (S.D.N.Y. Sept. 30, 1999), I find it appropriate to examine *sua sponte* whether to extend supplemental jurisdiction over the state claims.

I consider first whether plaintiff's state law claims fall within the Court's supplemental jurisdiction; and second, if they do, whether any abstention doctrine militates in favor of the Court's declining to exercise that supplemental jurisdiction.

**1. Supplemental Jurisdiction**

■ In addition to its claims under Section 10(b) of the Securities Exchange Act (over which this court has original and exclusive federal question jurisdiction) (see discussion *infra* under Part III.B.2.), plaintiff also brings claims for common law fraud, negligent misrepresentation, and breach of common law fiduciary duty. These claims do not arise under federal law and are properly characterized as state claims. In its Complaint, plaintiff asserts that this Court has jurisdiction pursuant to the Securities Exchange Act and "principles of supplementary jurisdic-

---

**10.** The issue is referenced tangentially in footnote 22 in plaintiff's brief.

tion." (Compl. at 2.) This Court's exercise of supplementary jurisdiction is governed by 28 U.S.C. § 1367, which provides that "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." Subsection (c) goes on to describe instances where the district courts "may decline to exercise supplemental jurisdiction over a claim." This includes instances where "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim ... over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," and "in exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)-(4). In the Second Circuit, the supplemental jurisdiction analysis has two steps. First, the court must "identif[y] one of the factual predicates which corresponds to one of the subsection 1367(c) categories." *Itar–Tass Russian News Agency et al. v. Russian Kurier, Inc.,* 140 F.3d 442, 446 (1998). Then, the court may exercise its discretion to determine whether to decline to grant supplemental jurisdiction; its decision should be informed by the values of judicial economy, convenience, fairness, and comity set forth in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Itar–Tass Russian News Agency,* 140 F.3d at 445–46.

■ Defendants' submissions argue both that the state claims in this case substantially predominate over the federal securities law claim, *see* Reply Brief at 4 ("[T]he facts now at issue in the active state proceeding will significantly impact,

if not control, the plaintiff's Securities claim in this federal lawsuit ...."), and that there is an identity of claims and parties between the present claim and existing state actions that is an exceptional circumstance rendering adjudication by this Court duplicative. *Id.* at 4–5 ("The parties in the state action are virtually identical to those in this federal lawsuit. More importantly, the state and federal claims arise from the exact same factual nexus, and in all cases, the relief sought in monetary.") I accordingly consider whether to exercise this Court's discretion to decline to extend supplemental jurisdiction over the state claims in this case pursuant to either § 1367(c)(2) (state claim substantially predominates) or § 1367(c)(4) (exceptional circumstance). Because "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)," *Itar–Tass Russian News Agency,* 140 F.3d at 448, the first step of the inquiry with regard to both 1367(c)(2) and 1367(c)(4) is to determine whether the facts indicate, respectively, that the state claims substantially predominate or that there are exceptional circumstances involved.

The first question, then, is whether the state claims in this case substantially predominate over the federal claim. State issues may predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Courts in this circuit have found that state claims predominate over federal claims where the federal claims involve a technical or other issue that is peripheral to the state claims, *McConnell v. Costigan,* No. 00–4598, 2000 WL 1716273 at *5 (S.D.N.Y. Nov. 16, 2000) (declining to exercise supplemental jurisdiction over multiple state claims (including claims for conversion, breach of contract defamation) where fed-

eral ERISA claim "relates to a relatively narrow issue" and "the state law claims will require resolution of much broader issues") and where the factual or legal analyses governing the federal and state claims are unrelated, *Freer v. Mayer*, 796 F.Supp. 89, 94 (S.D.N.Y.1992) (noting that "the predominance of state law claims, independent of the dismissal of the federal claim, would be sufficient grounds for this court to dismiss plaintiff's state law claims" where the state law claims involved corporate fiduciary duties and the federal law claim involved an alleged § 14(a) violation (governing false or misleading statements in the solicitation of a proxy) because "[t]he content and extent of fiduciary duties, corporate waste and the business judgment rule are fundamental issues of state law" and "there is no overlap with the content of the alleged § 14(a) violations").

In *Nelson v. Stahl*, 173 F.Supp.2d 153 (S.D.N.Y.2001), a case with facts very similar to those presented in the case at bar, plaintiffs brought federal claims under Section 10(b) (one claim for the transfer of corporate shares and another claim for the transfer of LLC interests), as well as various state claims, some relating to the transfer of corporate shares and some relating to the transfer of LLC interests. The state claims asserted included claims for common law fraud, fraud in the inducement, breach of fiduciary duty, breach of contract, and breach of implied covenant of good faith and fair dealing. *Id.* at 170. The court dismissed the Section 10(b) claims involving the transfer of the LLC interests on the grounds that the LLC interests did not constitute securities, but retained federal question jurisdiction over the Section 10(b) claims involving the transfer of corporate shares. *Id.* at 164–66. The court went on to exercise supplemental jurisdiction over those state claims related to the remaining Section 10(b) claims (relating to the transfer of corpo-

rate shares), but it declined to exercise supplemental jurisdiction over those state claims related to the Section 10(b) claims that were dismissed. *Id.* at 169–70. With regard to the state claims related to the Section 10(b) claims arising from the transfer of corporate shares, the court reviewed each state claim and determined that it was related to the same nucleus of operative fact—the transfer of the corporate shares. Accordingly, the court concluded that "[b]ecause Plaintiff's federal claim as related to the transfer of corporate stock ... has 'survived defendants' motions to dismiss, plaintiff's [related] state law claims cannot be said to predominate for purposes of Section 1367(c)(2).'" *Id.* at 170 (quoting *Marisol A. by Forbes v. Giuliani*, 929 F.Supp. 662, 686 (S.D.N.Y. 1996)). The court declined, however, to extend supplemental jurisdiction over the state claims related to the now-dismissed Section 10(b) claims involving the transfer of the LLC interests because "resolution of the issues raised in those claims is not necessary to resolution of the one [remaining] federal claim," the "common law claims do not arise from the same nucleus of operative facts as the surviving securities law claim," the common law claims "involve issues of fact and law far more wide-ranging, and dealing with a larger group of persons, than those implicated by the federal claims," and "[t]he proof required to decide these state law claims is ... much different from, and to a significant extent broader than, that required for resolution of the federal claims." *Id.* at 170.

Thus, in *Nelson*, where the federal securities law claim was retained, state law claims relating to the same series of events underlying that claim were not considered to predominate over the federal issue and supplemental jurisdiction was extended to these state law claims. But where the federal securities law claim was dismissed,

the court declined to extend supplemental jurisdiction over those state law claims relating to the series of events underlying the dismissed claim because state issues were considered to predominate.

The *Nelson* case is instructive. As with the state claims involving the transfer of corporate shares in *Nelson*, all the claims in this case, both state and federal, arise from the same basic series of events: allegedly false or misleading representations made regarding the status of the FCC license in soliciting the purchase of shares by plaintiff in Ellipso and Virtual Geo. Additionally, the proof required with regard to both the federal and state claims, although not identical,[11] will involve an inquiry into whether defendants misrepresented the status of the FCC license. Plaintiff's federal claim is brought against all defendants and alleges that defendants violated Section 10(b) of the Securities Exchange Act, which provides (in SEC Rule 10b–5 promulgated pursuant thereto):

> It shall be unlawful for any person … (a) To employ any device, scheme, or artifice to defraud, (b) To *make any untrue statement of a material fact* or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR 240.10b–5 (emphasis added). In order to establish a claim pursuant to Section 10(b), a plaintiff must show that " 'the defendant, in connection with the purchase or sale of securities, made a *materially false statement* or omitted a material fact, with scienter, and that the plaintiff's reli-

ance on the defendant's action caused injury to the plaintiff.' " *Nelson v. Stahl*, 173 F.Supp.2d 153, 163 (S.D.N.Y.2001) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir.2000)) (emphasis added). Plaintiff's state claims, which include claims for negligent misrepresentation (brought against all defendants on the ground that they misrepresented the status of the FCC license), common law fraud (brought against all defendants on the ground that fraudulent misrepresentations by defendants about the status of the FCC license induced plaintiff's investment), and breach of common law fiduciary duty (brought against the individual defendants—Chapman, Castiel and Stern—on the ground that the breached their duty by making misrepresentations regarding the status of the FCC license), will also require proof of alleged misrepresentations made by defendants regarding the status of the FCC license.

It is apparent that in the case at bar the events underlying both the federal claim and the state claims are the same. Additionally, the federal claim and the state claims present closely similar inquiries, a central part of which will involve the issue of whether defendants misrepresented the status of the FCC license and the results thereof. Thus, it is clear that the federal claim in the present case does not involve a matter of mere tangential, technical, or peripheral relevance to the bulk and substance of the state claims; it is, instead, an additional federal cause of action arising from the same alleged misrepresentations. There is clearly "substantial interplay" between the federal claim and the state law claims. *Hoffman*, 1999 WL 782518, at *9. Accordingly this case differs from those discussed *supra*, where courts in this juris-

---

**11.** *See* plaintiff's brief at 11, n. 11 (citing *Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 358 (2d Cir.1990), for the proposition that different standards of proof govern common law fraud (clear and convincing evidence) and claims under Rule 10(b)(5) (preponderance)).

diction have declined to extend supplemental jurisdiction on the ground that the state claims predominated over federal claims because the federal claims were peripheral or unrelated to the state claims.

For these reasons, I find that the state claims in this case do not predominate over the federal claim. Because a finding that the state claims predominate over the federal claims is necessary to sustain a declination of supplemental jurisdiction pursuant to § 1367(c)(2) and I make no such finding, I do not find that dismissal of the state claims is appropriate under that subsection.

■ Having determined that the factual predicate necessary to decline to extend jurisdiction pursuant to § 1367(c)(2) is not present, I turn to § 1367(c)(4), which provides that "[t]he district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." With regard to what constitutes an exceptional circumstance, the Second Circuit has observed that in order to be considered exceptional, a circumstance must be " 'quite unusual' " and that "federal courts 'must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten' " the principle that declining jurisdiction outside of Subsections 1367(c)(1)-(3) is "the exception rather than the rule." *Itar–Tass Russian News Agency,* 140 F.3d at 448 (quoting *Executive Software North America v. United States District Court,* 24 F.3d 1545, 1558 (9th Cir.1994)). The Ninth Circuit, in a case relied upon by the Second Circuit in its own interpretation of Subsection 1367(c), characterized the inquiry this way: "[T]he court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by

declining jurisdiction in the particular case (the compelling reasons)." *Executive Software North America,* 24 F.3d at 1558. *See also Luongo v. Nationwide Mut. Ins. Co.,* 95–3190, 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996) ("[The § 1367(c)(4) ] exception is a narrow one, because the court must find that the balance of the values of economy, convenience, fairness, and comity provide 'compelling reasons' for declining jurisdiction, and that the circumstances of the particular case are 'exceptional.' ").

The first question, then, is whether there are "exceptional circumstances" in the present case. Courts have found that there are exceptional circumstances justifying a decision to decline to exercise supplemental jurisdiction under § 1367(c)(4) where litigation of state claims in the federal forum would create jury confusion because the state and federal claims rely on different legal theories, *Padilla v. City of Saginaw,* 867 F.Supp. 1309 (E.D.Mich. 1994), where adjudication of the state claims would disrupt the adjudication of the primary claim, *Carlucci v. United States,* 793 F.Supp. 482, 485–86 (S.D.N.Y. 1992) (finding that exceptional circumstances existed where granting jurisdiction over the third party state claims "would interfere with the efficient collection of the taxes owed on behalf of the Davenport employees because it would simply prolong and complicate the proceedings"), and where the claims raised in parallel state and federal actions are duplicative and the exercise of federal jurisdiction would frustrate judicial economy. *Hays County Guardian v. Supple,* 969 F.2d 111 (5th Cir.1992), *cert. denied,* 506 U.S. 1087, 113 S.Ct. 1067, 122 L.Ed.2d 371 (1993). *See also Philip Morris Inc. v. Heinrich,* No. 95–0328, 1998 WL 122714, at *2 (S.D.N.Y. 1998) (declining to extend supplemental jurisdiction over third-party plaintiff's claim pursuant to § 1367(c)(4) where there was "another action in existence in a New

Jersey state court, addressing the same claims as those alleged in Besen's [third-party plaintiff] third-party complaint.").

The characteristics of the present case which defendants posit as unusual and militating against this Court's exercise of supplemental jurisdiction are the extent of the overlap between the inquiries in the state and federal proceedings and the significant progression of the Delaware state proceeding. ("Three other lawsuits involving the same core parties and operative facts are already pending in two other courts.") (Def.'s Main Brief at 6.) ("The instant action is nothing more than a concerted effort by the plaintiff to harass and financially destroy the defendants. This should be clearly evident by the repeated duplicitous lawsuits it continually files in different venues that assert the same basic claims.") ("[T]he Delaware actions [sic] has significantly advanced on the merits of the allegations.") (Def.'s Reply Brief at 1,10.) This question turns not so much upon whether defendants would welcome continued litigation in this Court (clearly they would not), but whether there is sufficient duplication between the Delaware action and the claims pleaded in this action to constitute an "exceptional circumstance" within the context of judicial economy. For the following reasons, I conclude that there is not.

As detailed in Part II, *supra*, the primary issue in the Delaware case involved the validity of the attempted merger of Virtual Geo into VGS, Inc. One counterclaim and eleven cross-counterclaims were also filed and most of these involved fiduciary and related claims alleging waste, mismanagement, and self-dealing. The

only surviving portion of these myriad salvos in the Delaware action [12] are two [13] cross-counterclaims for common law fraud and negligent misrepresentation. The surviving cross-counterclaim for fraud is brought by Sahagen and SST against Castiel, Ellipso, and VGHI (Castiel individually and as an agent of VGHI and Ellipso). As originally brought, the fraud claim alleged that Castiel made misrepresentations about "(a) his plans for use of Sahagen's and SST Global's investments in Virtual Geo LLC and Ellipso; (b) his plans and ability to manage those companies, to hire key employees, and to take advantage of business opportunities; (c) his intention to use Sahagen's and SST Global's investment to fund other entities in which he had an interest; and (d) the status of Ellipso's FCC license and Ellipso's failure to make its requisite benchmark filings in a manner that complied with the FCC's requirements." *Id.* As it now stands, following motion practice that included a summary judgment order and a grant of rehearing, *see* Part II, the only portion of the fraud claim that remains is the one involving the FCC license.

The surviving cross-counterclaim for negligent misrepresentation is brought by Sahagen and SST against the "defendants." (Second Amended Reply at 42, 51 in Zaid Decl. Ex. A.) The cross-counterclaims taken together are brought against defendants Virtual Geo and MCHI (parent company of Ellipso) in addition to Castiel, Ellipso, and VGHI; however, the substance of the negligent misrepresentation claim appears to involve only actions by Castiel (individually and as an agent of

---

12. I do not address the District of Columbia action, which involves primarily the merger and has, regardless, been stayed pending disposition of the Delaware case.

13. Although they are presented in the Second Amended Reply as four separate claims, the

Delaware Court of Chancery noted in its opinion of that some of the claims "essentially replicate" others and are properly consolidated and considered as two claims. *VGS, Inc. v. Castiel*, No. CIV.A.–17995, 2003 WL 723285, at *6 (Del.Ch. Feb. 28, 2003).

Ellipso and VGHI). Thus, it is not clear exactly against whom the negligent misrepresentation claim is lodged; it seems most likely that it is brought against Castiel, Ellipso and VGHI, but it may also be brought against Virtual Geo and MCHI. The negligent misrepresentation claim alleged that "defendants omitted, in their discussions with SSTG, the material fact that they had not made their requisite benchmark filings in a manner that complies with the strict requirements of the FCC." *Id.* at 42. The negligent misrepresentation claim survives the previous motion practice.

The present action does, in significant part, duplicate the surviving state crosscounterclaims for fraud and negligent misrepresentation described above. Plaintiff SST (wholly owned by Sahagen) in the present case likewise brings a claim for common law fraud and negligent misrepresentation based on the same grounds as the fraud and negligent misrepresentation claims asserted in the Delaware case (namely, alleging that misrepresentations by defendants relating to the FCC license induced his investment in Ellipso and Virtual Geo). However, there are some differences between the surviving state claims in the Delaware action and the state claims in the present action. First, the surviving cross-counterclaims in the Delaware case are brought against Castiel individually and as an agent of Ellipso and VGHI and possibly Virtual Geo and MCHI; the commensurate claims in the present case are likewise brought against Castiel, Ellipso, Virtual Geo, but they are also brought against Chapman and Stern. Second, the claims for fraudulent and negligent misrepresentation asserted in the

present action include the over $700,000 that Sahagen invested when he purchased shares from Chapman; no claim is made for these amounts in the Delaware action. Additionally, a state claim for breach of common law fiduciary duty (which is not presented as a derivative claim—the Complaint states that "Chapman, Castiel and Stern acted as plaintiff's fiduciary in connection with the acts and transactions described elsewhere in this Complaint") is raised in the present action. Various claims for breach of fiduciary duty were likewise brought as cross-counterclaims and dismissed in summary judgment in the Delaware action, but these were derivative claims [14] and are not, therefore, the same as the claims in the present action.

Thus there is substantial, but not complete, duplication of the surviving state claims in the Delaware case and the state claims asserted in this case. And when this federal action in its entirety is compared to the state action, there is the additional difference that in this action plaintiff raises a federal claim, over which this Court has exclusive and original jurisdiction.

As a general matter, "[t]here is no bar against parallel *in personam* actions proceeding in two or more courts. 'Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res adjudicata.*'" *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 525 (2d Cir.2001) (discussing princi-

---

**14.** These claims, as set forth in the Second Amended Reply, were postured both as direct and derivative claims, but the Delaware Court of Chancery determined that all of the claims were substantively derivative claims and granted summary judgment on the ground

that Sahagen had not properly brought a demand before the relevant corporate entities. *VGS, Inc. v. Castiel*, No. CIV.A–17995, 2003 WL 723285, at *10–11 (Del.Ch. Feb. 28, 2003).

ples of abstention) (quoting *Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922)). In instances where courts have dismissed claims under § 1367(c)(4) on grounds of duplication and judicial economy, the duplication between the federal and state proceedings has been much more marked or the fact of duplication has been accompanied by the presence of other factors rendering the circumstances "exceptional".

For example, in *Hays County Guardian v. Supple*, 969 F.2d 111, claims were brought in federal court against state officials in both their individual and official capacities. The claims against the state officials in their official capacities were remanded to state court, based upon the district court's determination that the Eleventh Amendment barred the federal court from hearing them. The district court then declined to extend supplemental jurisdiction over the remaining claims against the officials in their individual capacities under § 1367(c)(4). The Fifth Circuit held on appeal that the decision not to extend supplemental jurisdiction was within the district court's discretion because there were "exceptional circumstances" for purposes of § 1367(c)(4), namely "[a]djudicating state law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources." *Id.* at 125. Thus, in *Hays County*, the only difference between the state action and the federal action was that in the first the state officials were being sued in their official capacities and in the other they were being sued in their individual capacities; additionally, upon declining to extend jurisdiction over the state claims, the court disposed of the entire action—there were no remaining claims to be resolved in the federal forum.

In *Philip Morris Inc. v. Heinrich*, the court found that there were "exceptional circumstances" warranting a dismissal of the state claims where there was a pending parallel state proceeding. However, in *Philip Morris*, other factors contributed to the court's finding that the circumstances were exceptional. In *Philip Morris*, a party sought leave to file a third-party complaint in an ongoing federal action, where there was a parallel state proceeding in New Jersey state court addressing some of the same claims as those that the third-party plaintiff sought to bring in the federal action. 1998 WL 122714, at *1–*2. The court declined to exercise jurisdiction pursuant to § 1367(c)(4) over those claims that were already pending in state court. The court relied on three findings to support its conclusion to decline to exercise supplemental jurisdiction: "First, there is currently another action in existence in a New Jersey state court, addressing the same claims.... Second, the addition of all of the third-party claims to this action would prejudice Philip Morris by further delaying and complicating this [the federal] action ....", and third, most of the third-party state claims were "separate from and independent of the issues to be litigated in the main action...." *Id.* at *2. Thus, while the fact that there was a parallel proceeding wherein some of third-party plaintiff's claims were duplicated was a factor considered by the court, it was not the only basis for the court's decision. The court also relied upon the fact that the state claims sought to be asserted were unrelated to the existing claims in the federal action (and the resolution of the unrelated state claims would, therefore, significantly complicate the federal action, which was in itself complicated and had already been delayed), and its determination that the ongoing state proceeding could adequately protect the third-party plaintiff's interests with regard to those claims over which the court declined to extend jurisdiction. *Id.*

The duplication of claims in the state and federal proceedings in the present instance is not as marked as that in *Hays County*—the claims here are not identical; they involve different parties and additional claims. And, unlike in *Hays County,* if this Court was to decline to extend supplemental jurisdiction over plaintiff's state claims, plaintiff's federal claims would still require resolution in a federal forum. Nor are other factors present that render the circumstances in the present case "exceptional," as in *Philip Morris.* The present action has not progressed to a significant extent and consideration of plaintiff's state claims would not unduly complicate or delay the present action by requiring "additional motion practice, additional discovery, . . . [or] the injection of unrelated . . . issues." *Philip Morris,* 1998 WL 122714, at *2. To the contrary, in the present case, the federal securities claim involves many of the same factual issues underlying the state claims and cannot be resolved in a state forum.

Consistent with my finding that there is no exceptional circumstance in this case, I also find that there are no compelling reasons to decline to extend jurisdiction. It is not clear that the considerations outlined in *Gibbs*—comity, fairness, convenience, judicial economy—would be considerably furthered by declining to extend supplemental jurisdiction over the state claims in this case. The same factual issues relating to the representations made regarding the status of the FCC license will have to be considered in the federal forum in order to adjudicate the § 10(b) securities law claim, even if supplemental jurisdiction is not exercised over the state claims. Nor is it clear, given the fact that additional state claims are brought against different defendants in the present action, that fairness would be furthered by declining to hear the state claims. I do not find, therefore, that there is a "compelling" reason to decline to exercise supplemental jurisdiction.

Before turning to abstention analysis, I summarize my conclusions on the exercise of supplemental jurisdiction over plaintiff's state law claims. I hold that supplementary jurisdiction is properly exercised over plaintiff's state claims pursuant to § 1367(a) because: 1) this Court has original jurisdiction over plaintiff's securities law claims and the state claims "are so related . . . [to the federal securities law claims] that they form part of the same case or controversy," (28 U.S.C. § 1367(a), and 2) I find no ground to decline to extend supplemental jurisdiction pursuant to either § 1367(c)(2) (state claims predominate) or § 1367(c)(4) (exceptional circumstances).

## 2. Abstention.

■ "In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by this Court applies." *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 174, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Defendants argue that abstention in this case is warranted pursuant to the "exceptional circumstances" test set forth in *Colorado River Water Conservation District et al. v. United States,* 424 U.S. 800, 818–20, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

As discussed *supra,* plaintiff brings a claim alleging that defendants violated Section 10(b) of the Securities Exchange Act of 1934 by misrepresenting the status of the FCC license in connection with plaintiff's purchase of shares in Ellipso and Virtual Geo. This claim for violation of the Securities Exchange Act is not raised in either of the pending state proceedings— federal courts have exclusive jurisdiction over matters arising under § 10(b) and only federal courts can provide affirmative relief under this section. *Alkoff,* 611

F.Supp. at 65 ("The federal courts have exclusive jurisdiction over federal securities law claims under the 1934 Act.").

Numerous cases have held that, because federal jurisdiction over securities claims is exclusive, abstention with regard to an action involving federal securities claims is inappropriate, including in the specific instance where a claim under § 10(b) is made. *See, e.g., Finkielstain v. Seidel,* 857 F.2d 893 (2d Cir.1988); *Fields v. Allied Capital Corporation,* No. 89–5679, 1990 WL 128908 (S.D.N.Y. Aug. 28, 1990); *Alkoff,* 611 F.Supp. 63 (S.D.N.Y.1985). In *Alkoff v. Gold,* for example, the plaintiff brought an action in the Southern District asserting claims under Section 10(b) and various state law claims, including claims for fraud, duress, and mistake. 611 F.Supp. at 64. The court held that abstention under *Colorado River* was inappropriate, even though "all of the factual issues arising from the parties' relationships are presented in the [pending] state court action," because *Colorado River* abstention "is inapplicable ... because there is no concurrent state and federal jurisdiction over the federal securities law claims herein." *Id.* at 65. Similarly, in *Fields v. Allied Capital Corporation,* the court held that *Colorado River* abstention "can apply only if the federal and state courts have concurrent jurisdiction over the claims asserted. Where, as in this case, a plaintiff brings claims under the Securities Exchange Act of 1934, there can be no concurrent jurisdiction." 1990 WL 128908 at *2.

Defendants, however, contend that "adjudication in Delaware will substantially resolve even the asserted federal securities claim by resolving the underlying factual issues which allegedly support it," and cite a Third Circuit case, *Riley v. Simmons,* 45 F.3d 764 (3d Cir.1995), for the proposition that the presence of a federal issue giving a district court independent federal juris-

diction does not necessarily preclude abstention where related state claims are pending. (Def.'s Reply Brief at 4, 9). But defendants' reliance upon *Riley* is misplaced. Far from supporting defendants' argument, the holding in *Riley* is actually in accord with the decisions in this circuit previously discussed, which hold that abstention is inappropriate where there is exclusive federal jurisdiction pursuant to the securities laws. In *Riley,* the Third Circuit overturned the district court's grant of *Burford* abstention (applied where there are difficult questions of state law and federal review would disrupt state policy-making) where plaintiffs brought federal securities claims, including a § 10(b) claim, even though claims arising from the same facts and based in state law were pending in state court. *Id.* at 773–74. The court held that timely and adequate state review was not available to plaintiffs because their "10b 5 claim falls exclusively within the province of the federal courts," and therefore abstention was not warranted. *Id.* at 777.

Defendants offer no reason why the cases decided in this circuit, directly on point and holding that *Colorado River* abstention cannot be used to justify abstention with regard to actions that include § 10(b) claims over which federal courts have exclusive jurisdiction, should not be followed in the present identical case, and I see none. I would reach that conclusion even without the guidance of such precedent.

There is a "heavy presumption favoring jurisdiction" and weighing against abstention. *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). Under *Colorado River* and its progeny, a number of factors were identified as bearing on the exceptional circumstances test: "the assumption by either court of jurisdiction over any res or prop-

erty, the inconvenience of the federal forum, the avoidance of piecemeal litigation, ... the order in which litigation was obtained, ... whether state or federal law supplies the rule of decision, and whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Bethlehem Contracting Co.*, 800 F.2d at 327 (2d Cir. 1986). The decision whether abstention is appropriate under the exceptional circumstances test lies within the discretion of the district court. *Id.* However, it is an abuse of discretion for a district court to fail to analyze factors that militate against abstention or otherwise fail to adequately recognize the "heavy presumption" against abstention. *Id.* at 327–28. I will consider the factors identified as bearing on a decision to grant abstention in turn.

None of the claims asserted by plaintiff require this Court or the state court to assume jurisdiction over res or property. This factor therefore weighs against abstention.

With regard to inconvenience of the federal forum, two of the parties in this case (Stern and Chapman) are not named parties in the Delaware case and will not, therefore, be inconvenienced by litigation of this matter before this Court. The distance between state and federal fora has been deemed to render the federal forum inconvenient. *Radioactive, J.V. v. Manson*, 153 F.Supp.2d 462, 476 (S.D.N.Y. 2001) (finding federal forum inconvenient under abstention analysis where "[w]itnesses and parties will be forced to travel back and forth between California and New York."). However, with modern travel options, the effective distance between this forum (New York) and the state forum (Delaware) is short and would not appear to pose undue hardship. Additionally, not all parties are affected. I therefore find that this factor does not weigh materially in favor of abstention.

The next factor to be considered is whether review before this Court will result in piecemeal litigation. In *Cohen v. Reed*, 868 F.Supp. 489, 500 (E.D.N.Y.1994), the court found that where a federal securities claim pursuant to § 10(b) is raised, if the federal "action were stayed or dismissed pending resolution of the State-court action, [the plaintiff] would not be able to litigate his federal securities fraud claim, and would have to return to federal court once more. Thus, abstention would not serve to avoid piecemeal litigation...." The presence of the federal securities law claim, therefore, makes it plain that abstention as to the state law claims would not operate to reduce piecemeal litigation.

A related aspect of piecemeal litigation, however, is whether resolution in one forum will resolve the claims as to all parties. *Tarka v. Greenfield Stein & Senior, LLP*, No. 00–1262, 2000 WL 1121557, at *5 (S.D.N.Y. Aug. 8, 2000) (noting that "piecemeal litigation is a product of additional parties"). The present case includes claims against defendants who are not named parties in the state case (Stern and Chapman). However, one of the surviving state cross-counterclaims may be brought against MCHI, *see* discussion under Part II.B.1., *supra.* pp. 460–461, a party not named as a defendant in the present action. Thus it appears that, because there are additional parties named in both actions, that there is the possibility of piecemeal litigation running in both directions. It should be noted, however, that this concern is mitigated to some extent by the fact that Stern and Chapman were both officers of Ellipso, which is a party in the state action, and MCHI is a parent company of Ellipso, which is a party in the federal action. The most compelling factor may be that claims are brought against Chapman individually in the federal action (regarding his sale of his personal shares

of Ellipso to plaintiff Sahagen) that are not raised in the state action. Thus, the claims against this defendant may not be resolved in the state case and will likely require federal resolution regardless of the outcome in the state case; abstention by this Court may not, therefore, reduce the likelihood of piecemeal litigation.[15] On balance, this factor (the likelihood of piecemeal litigation) would not appear to weigh heavily either for or against abstention.

Finally, there is also some consideration given under this prong of abstention analysis to the issue of whether proceedings in the federal forum will be duplicative, although this is said to weigh only slightly in favor of abstention. *Tarka*, 2000 WL 1121557 at *5 ("Courts have been careful ... to draw a distinction between merely duplicative litigation and potentially piecemeal litigation, noting that the latter is a product of additional parties. Nevertheless, courts have suggested that the existence of merely duplicative litigation weighs in favor of abstention, although it is not a determinative factor."). As discussed in detail *supra*, there is some duplication between the state cross-counterclaims that persist in the Delaware case and the state claims for fraud and negligent misrepresentation that are brought in this case. As previously noted, however, these claims are brought against additional defendants in the present case and are broadened to include the $700,000 worth of shares that Sahagen purchased from Chapman. Most importantly for abstention purposes, the present case also includes a federal securities law component. Thus, there is some duplication of the claims for fraud and negligent misrepresentation, but the factual underpinnings of

the surviving claim in the Delaware case and the claims in the present case are the same (representations made to Sahagen regarding the status of the FCC license), this Court is in any event required to adjudicate plaintiff's § 10(b) claim. Accordingly judicial economy would not be offended by this Court's retention of jurisdiction over this action, and the factor of duplication does not weigh significantly in favor of abstention.

The next relevant factor that must be weighed is the order in which jurisdiction over the litigation was obtained and the relative progress of the state and federal proceedings. The surviving claims for fraudulent and negligent misrepresentation in the Delaware case, which essentially duplicate the claims for common law fraud and negligent misrepresentation in the present case, have clearly progressed further in the state proceeding than in the present proceeding. The claim in the Delaware case has been the subject of a summary judgment ruling, which was overturned on a grant of rehearing, and is now scheduled for trial. *See* discussion of procedural history, *supra*. The claim in the present case is the subject only of the present motion to dismiss or stay. Because the state proceeding has progressed further than the federal proceeding, this factor weighs in favor of abstention.

The final two factors in the abstention analysis, however, both weigh heavily against abstention. These factors are whether federal or state law provides the rule for decision and whether the state forum would adequate protect the plaintiff's interests. Because the present claim includes federal securities law claims over

---

**15.** Of note, there are counterclaim defendants in the Delaware action, Neel Howard and Tom Quinn, who are not represented as plaintiffs in the federal action. I do not consider their presence in the piecemeal litigation

analysis, however, because they do not appear to be active participants in the Delaware proceeding. *See* Post–Trial Brief of Counterclaim Defendants at 1, n. 1 (Ex. H to Wille Aff.).

which this Court has original and exclusive jurisdiction, federal law not only supplies the rule of decision with regard to plaintiff's § 10(b) claim, but plaintiff's interests relating to its securities law claims could not, as a matter of law, be adequately protected in state court, which is barred from providing affirmative relief with regard to these claims. Courts evaluating whether to abstain where a plaintiff brings a § 10(b) claim have given heavy weight to these considerations and concluded that because these considerations weigh so heavily against abstention, abstention is not appropriate. *See, e.g., Cohen v. Reed,* 868 F.Supp. 489, 500–501 (E.D.N.Y.1994). Together, these factors militate strongly against abstention.

Balancing all of these factors together, and mindful of the fact that with regard to plaintiff's § 10(b) claim plaintiff does not have a remedy in state court and federal law supplies the rule of decision, I find that there is no exceptional circumstance that justifies abstention. Based on the foregoing, I conclude that abstention is not warranted with regard to plaintiff's claim; defendants' application for a stay of that claim is accordingly denied.

## IV. CONCLUSION

In summary, I hold that: (1) the extension of supplemental jurisdiction over plaintiff's state claims is warranted; (2) this case will not be stayed pending the resolution of ongoing state proceedings; and (3) venue is properly located in this judicial district.

This Court issued an Order dated July 10, 2004, staying discovery. The Order of July 10 is hereby vacated and the stay on discovery is lifted. Counsel for the parties are directed to confer and submit to the Court a revised and updated report pursuant to Rule 26(f), Fed. R. Civ. Proc., not later than August 15, 2003. The Court will then schedule a status conference.

It is SO ORDERED.

The claims in this action are based on what information, specifically relating to the status of the FCC license, was provided to Sahagen during his decision to invest in Ellipso and Virtual Geo. Through the aforementioned affidavits, plaintiff has submitted evidence that alleged omissions central to his claims in this case occurred in New York. I conclude that the standard set forth in § 1391(b)(2) is satisfied; plaintiff has shown that "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.